WILLIAMS et al., Appellees,

v.

SCHREGARDUS, Director, et al., Appellants.

MEEKS, et al., Appellees,

v.

SCHREGARDUS, Director, et al., Appellants.

[Cite as *Williams v. Schregardus* (1994), 96 Ohio App.3d 664.]

Court of Appeals of Ohio,
Franklin County.

Nos. 94APH05–712, 94APH05–713, and 94APH05–891 through 94APH05–911.

Decided Oct. 13, 1994.

*Young & Alexander Co., L.P.A.,* and *A. Mark Segreti, Jr.,* for appellees Albert Meeks et al.

*Lee Fisher,* Attorney General, and *John K. McManus,* for appellant Donald R. Schregardus.

*Rendigs, Fry Kiely & Dennis,* and *Jonathan Saxton,* for appellant Oeder and Sons Garage, Inc.

*Kevin J. Hopper Co.,* and *Kevin J. Hopper,* for appellant Buckeye Ready–Mix Concrete, Inc.

TYACK, Judge.

On September 5, 1991, Oeder and Sons Garage, Inc. ("Oeder") filed an application with the director of the Ohio Environmental Protection Agency ("OEPA") for a Permit to Install ("PTI") an air contaminant source. Oeder is a diesel fuel storage and dispensing facility located in Lebanon, Ohio. Specifically, Oeder sought a PTI for three 10,000 gallon diesel fuel tanks and one 4,000 gallon diesel fuel tank. On January 15, 1992, a PTI was issued to Oeder by the OEPA. In a separate action, Buckeye Ready–Mix Concrete, Inc. ("Buckeye"), a concrete plant also located in Lebanon, Ohio, filed for a PTI for a 4.2 MMBTU # 2 oil-fired boiler. On January 23, 1992, the PTI was issued by the OEPA.

In February 1992, several area residents (hereinafter "appellees") filed what the Environmental Board of Review ("EBR") later construed as a notice of appeal regarding both PTIs with the EBR. The parties agreed to proceed with one hearing on both matters. A hearing was held on August 18, 1993 and on April 19, 1994, the EBR issued its findings of fact, conclusions of law and final order which vacated the director's issuance of the PTIs and remanded the matter to the director for further consideration. The OEPA, Oeder and Buckeye (hereinafter "appellants") have appealed to this court, assigning one error for our consideration:

"The Environmental Board of Review erred in holding that when an applicant requests a permit to install or plan approval under OAC 3745–31–05, Ohio EPA must review virtually every state and federal environmental regulation and determine that the emission source is in compliance with every one of these regulations prior to issuing a permit."

In reaching its decision to remand the matter to the director, the EBR stated that the director based his decision to issue the PTIs only upon consideration of applicable air regulations. The EBR concluded that additional matters should have been considered; however, it did not state specifically what those matters were. The EBR's findings of fact do indicate that appellees were concerned with the effect of the tanks and boiler on their wells and with the location of the tanks and boiler on a sole source aquifer. Alan Lloyd, Environmental Scientist in the OEPA's Division of Air, testified that upon application for a PTI for an air contaminant source, he considered only ambient air quality standards and Division of Air regulations and no water regulations. As stated above, the EBR remanded the matter to the director for consideration of additional matters.

Appellants contend that the EBR's order is erroneous because Ohio Adm.Code 3745–31–05 limits the director's scope of review to only those regulations that apply to the type of emissions for which a permit is sought, here, air contaminants. Appellants contend that the EBR's order requires the OEPA to review

essentially every state and federal environmental regulation. In reviewing the order of the EBR, we are bound by the standard of review set forth in R.C. 3745.06, which states:

"The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

The issue presented for our review, whether or not the director should have considered more than just air regulations in reviewing these particular PTI applications, involves the interpretation of Ohio Adm.Code 3745–31–05 and related provisions. Ohio Adm.Code 3745–31–05 states, in pertinent part:

"(A) The director shall issue a permit to install or a plan approval, on the basis of the information appearing in the application, or information gathered by or furnished to the Ohio environmental protection agency, or both, if he determines that the installation or modification and operation of the air contaminant source, solid waste disposal facility, water pollution source, disposal system, land application of sludge, or public water system will:

"(1) Not prevent or interfere with the attainment or maintenance of applicable ambient water quality standards or ambient air quality standards; and

"(2) Not result in a violation of any *applicable laws,* including but not limited to:

"(a) Effluent standards adopted by the director or administrator of the United States environmental protection agency;

"(b) Emission standards adopted by the Ohio EPA;

"(c) Federal standards of performance for new stationary sources adopted by the administrator of the United States environmental protection agency pursuant to section 111 of the Clean Air Act * * *;

"(d) Requirements regarding non-attainment areas, as defined in section 171 et seq. of the Clean Air Act * * *." (Emphasis added.)

Appellants contend that the above-emphasized language can be interpreted either of two ways. One, "applicable laws" means only those provisions that apply to the type of emission sought in the permit or, two, "applicable laws" means any relevant environmental regulations that may apply to the facility regardless of whether it relates to the PTI sought. Appellants, of course, argue that "applicable laws" means only those provisions relating to the type of PTI sought. We disagree.

A plain reading of Ohio Adm.Code 3745–31–05 supports the EBR's order below. By its very language, Ohio Adm.Code 3745–31–05 contemplates that a review of an application for a PTI for diesel fuel storage tanks or an oil-fired boiler may involve consideration of regulations other than only air regulations. Ohio Adm.Code 3745–31–05(A) states that a PTI will be issued only if the " * * * air contaminant source * * * [or] water pollution source * * * will (1) [n]ot prevent or interfere with the attainment or maintenance of applicable ambient water quality standards * * *." Even if one looks at the tanks and boiler as air contaminant sources only and not as water pollution sources, those air contaminant sources still cannot prevent or interfere with attainment or maintenance of ambient water quality standards. Of course, these tanks and the boiler may also be considered water pollution sources. Therefore, the effect these tanks and the boiler may have on ambient water quality in relation to the relevant standards must be considered.

In addition, Ohio Adm.Code 3745–31–05(A)(2)(a) states that the director will issue a PTI only if the air contaminant or water pollution source will "[n]ot result in a violation of any applicable laws, including but not limited to * * * [e]ffluent standards adopted by the director or the administrator of the United States environmental protection agency * * *." "Applicable laws" is defined, in Ohio Adm.Code 3745–31–01(F) as the: " * * * applicable provisions * * * rules, regulations, and orders of the Ohio EPA; the Clean Air Act, * * * *the Federal Water Pollution Control Act,* * * * and rules and regulations of the administrator of the United States environmental protection agency." (Emphasis added.) Thus, "applicable laws" expressly includes water pollution regulations. In addition, the applicable rules and regulations of the United States EPA, which include regulations other than just air regulations, must be considered. Ohio Adm.Code 3745–31–05(A)(2)(a) expressly includes effluent standards in the "applicable laws" which cannot be violated by installation of the pollution source. Effluent standards encompass regulations with regard to the prevention of water pollution.

Although it is a discretionary provision, Ohio Adm.Code 3745–31–05(C) lends support to our ruling. Ohio Adm.Code 3745–51–05(C) states:

"In deciding whether to grant or deny a permit to install or plan approval, the director may take into consideration the social and economic impact of the air contaminants, *water pollutants, or other adverse environmental impact* that may be a consequence of issuance of the permit to install or plan approval." (Emphasis added.)

The fuel tanks and boiler in question will be located on an aquifer and, thus, a leak or other accident could have considerable social and economic impact on the community. Such a possibility may be considered by the director upon remand.

Thus, in light of the plain language in Ohio Adm.Code 3745–31–05 and considering the location of the tanks and boiler on an aquifer, the director was obligated to consider more than just air pollution regulations. The facts of the case and the Ohio Administrative Code demand nothing less. Contrary to appellants' contention, the director is not required to look at *every* rule and regulation. On the facts of these PTI applications, more than air pollution regulations had to be considered; certainly, relevant water pollution regulations should have been considered. Hence, the EBR's order remanding the matter to the director for further consideration is supported by reliable, probative and substantial evidence and is in accordance with law. Accordingly, appellants' sole assignment of error is overruled.

Having overruled appellants' assignment of error, the final order of the EBR is hereby affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and PETREE, JJ., concur.