[Cite as *Concerned Residents of Salem Twp. v. Stevenson*, 2023-Ohio-2135.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Concerned Residents of Salem Township et al., | : | Nos. 22AP-393, 22AP-394, 22AP-395, 22AP-396, 22AP-397, |
| | : | 22AP-398, 22AP-399, 22AP-400, |
| Appellants-Appellants, | | 22AP-401, 22AP-402, 22AP-403, |
| | : | 22AP-404, 22AP-405, 22AP-406, |
| v. | | 22AP-407, 22AP-408, 22AP-409, |
| | : | 22AP-410, 22AP-411, 22AP-412, |
| Laurie Stevenson et al., | | 22AP-413, 22AP-414, 22AP-415 |
| | : | & 22AP-416 |
| Appellees-Appellees. | | (ERAC Nos. 22-7119, 22-7120, 22-7121, |
| | : | 22-7122, 22-7123, 22-7124, 22-7125, |
| | | 22-7126, 22-7127, 22-7128, 22-7129, |
| | : | 22-7130, 22-7131, 22-7132, 22-7133, |
| | | 22-7134, 22-7135, 22-7136, 22-7137, |
| | : | 22-7138, 22-7139, 22-7140, 22-7141, |
| | | & 22-7142) |
| | : | |

D E C I S I O N

Rendered on June 27, 2023

**On brief:** *Fair Shake Environmental Legal Services*, and *John A. Heer*, for appellants. **Argued:** *John A. Heer*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Kristin L. Watt*, and *Ryan D. Elliott*, for appellee Airstream Compression, LLC. **Argued:** *Ryan D. Elliott*.

**On brief:** *Dave Yost,* Attorney General, *Casey L. Chapman*, and *Rebecca E. Kanz*, for appellee Director, Ohio Environmental Protection Agency. **Argued:** *Casey L. Chapman*.

APPEALS from the Environmental Appeals Review Commission

EDELSTEIN, J.

{¶ 1} Appellants, Concerned Residents of Salem Township and 40 of its individual members (collectively "CRST" or "appellants"), appeal from an order of the Environmental

Review Appeals Commission of Ohio ("ERAC"), dismissing their administrative appeal challenging the decision of appellee, Laurie Stevenson, Director of the Ohio Environmental Protection Agency ("OEPA") ("Director"), to issue a permit to appellee, Airstream Compression, LLC ("Airstream"), authorizing the emission of air pollutants at its natural gas booster station.  Because ERAC's order granting the motion to dismiss is supported by the evidence and in accordance with law, we affirm.

## I.  Facts and Procedural History

{¶ 2}    The OEPA regulates sources of air pollution by setting contaminant emission rates and other conditions of operation through a permitting process.  On December 28, 2021, the Director issued a permit authorizing Airstream to install and operate two natural gas compressors at the Applegath Booster Station in East Springfield, Ohio.  The Permit-to-Install and Operate ("PTIO") was deemed a final action and went into effect that same day.

{¶ 3}    CRST, a community organization comprised of residents who live near the station, as well as 40 of its individual members, appealed the Director's decision to issue the Applegath permit to ERAC on January 27, 2022.  In the consolidated Notice of Appeal to ERAC, CRST raised the following two assignments of error:

> The Director's issuance of the Permit is arbitrary, capricious, and otherwise inconsistent with law. Specifically,
>
> a. The Permit's emission limits and other requirements do not take into consideration the local airstream already being saturated with emissions from the neighboring Williams Compressor Station and other similar sources in the near vicinity, and thus the Permit fails to assure compliance with permit conditions and state air nuisance requirements.
>
> b. The Permit's failure to account for the already harmful emissions from the neighboring Williams Compressor Station and the further inadequate limits imposed by this Permit will allow the Facility to operate in such a manner as to emit odor, smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, and other substances or combinations of substances, and to

> endanger the health, safety, and welfare of the public or cause
> unreasonable injury or damage to property in violation of Ohio
> Adm. Code 3745-15-07.

{¶ 4} On April 1, 2022, Airstream moved to dismiss the appeal. Airstream argued that appellants lacked standing to bring the appeal because they failed to allege injury from the issuance of the permit and that both assignments of error failed to state a claim upon which relief can be granted. Airstream asserted the first assignment of error fails as a matter of law because the Director is not required to consider other sources of air pollution when determining emission limits. Airstream argued appellants' second claim also fails as a matter of law because they cannot allege conduct constituting nuisance at this stage because the facility has not yet begun to operate. Airstream attached to their motion an affidavit from James Lebeck, Vice President of Airstream's "parent" company, Encino Acquisition Partners. Appellants filed a memorandum in opposition on April 22, 2022, attaching the affidavits of appellant Darlene Williamson and Dr. Yuri Gorby, a research scientist who conducted air monitoring around the proposed location of the Applegath Booster Station. Dr. Gorby averred in his affidavit that the emissions authorized by the Applegath permit will cause "Appellants to suffer additional risk of harm" and endanger the "health, safety, and welfare of the Appellants and the public." (Gorby Aff. at ¶ 7-8.) Although named in the appeal, OEPA did not participate in the briefing.

{¶ 5} On June 8, 2022, ERAC issued a ruling granting Airstream's motion to dismiss both assignments of error. ERAC noted it relied on the standard from Civ.R. 12(B)(6) to determine whether appellants had stated claims upon which relief could be granted. ERAC determined appellants did not adequately allege in their first assignment of error how the issuance of the permit was unlawful because they did not describe a specific rule or regulation the Director failed to comply with. (June 8, 2022 ERAC Decision at ¶ 16-17.) ERAC next turned to whether the issuance of the permit was reasonable. (ERAC Decision at ¶ 17-23.) There, appellants argued granting the permit was unreasonable because the Director failed to consider whether the emission limits authorized by the permit and existing sources of air pollution would constitute a public nuisance under Ohio

Adm.Code 3745-15-07(A). ERAC found appellants failed to allege which permit condition would create an unreasonable risk of harm, what type of harm it would cause, or how it would do so. Finding both assignments of error failed to state a claim upon which relief can be granted, ERAC determined the issue of standing was moot and entered an order dismissing the appeal.

**{¶ 6}** Appellants timely appealed the ERAC order to this court. Because individual appeals were before ERAC, notices of appeal were filed from each of the 24 cases in the underlying proceedings. The appeals were consolidated for briefing and argument.

## II. Assignment of Error

**{¶ 7}** Appellants assign the following assignment of error for our review:

> The findings by ERAC that Appellants "have not alleged that the emissions from Applegath Booster Station will pose an *unreasonable* risk of harm" (italics original) and that Appellants "do not allege that the Director acted unlawfully" were erroneous and contradicted by the record; thus, the rulings were not "supported by reliable, probative, and substantial evidence" and not "in accordance with law" pursuant to Ohio Revised Code §3745.06.

## III. Discussion

### A. Controlling Law and Standard of Review

**{¶ 8}** The decision to grant a permit application authorizing a new source of air contaminant emissions is made by the Director of the OEPA. "R.C. 3745.01 gives the Director authority to make initial decisions on environmental permitting issues. For purposes of making such decisions, the Director has the authority to hire experts to collect and apply necessary technical information." *Licking Cty. Citizens for a Safe Environment v. Schregardus*, 136 Ohio App.3d 645, 648 (10th Dist.2000). "An application will be deemed complete when all the statutory and regulatory enumerated and mandatory components of the application have been reasonably and fully answered." *Citizens Against Megafarm Dairy Dev., Inc. v. Dailey*, 10th Dist. No. 06AP-836, 2007-Ohio-2649, ¶ 12.

**{¶ 9}** Actions of the Director, such as the decision to grant or deny a permit application, are appealable to ERAC. The commission reviews decisions of the Director

under the standard set forth in R.C. 3745.05(F) to determine whether the challenged action was "lawful and reasonable." ERAC is required to affirm an order if it is both lawful and reasonable. If ERAC finds the act was either unlawful or unreasonable, it must modify or vacate the Director's order. *Id.* "Under this standard, the term 'unlawful' means 'that which is not in accordance with law,' and the term 'unreasonable' means that which does not have a valid factual foundation." *Citizens Against Am. Landfill Expansion v. Koncelik*, 10th Dist. No. 12AP-741, 2014-Ohio-123, ¶ 12. "It is only where [ERAC] can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable." *Club 3000 v. Jones*, 10th Dist. No. 07AP-593, 2008-Ohio-5058, ¶ 28, citing *Citizens Commt. to Preserve Lake Logan v. Williams*, 56 Ohio App.2d 61, 70 (10th Dist.1977). ERAC may not substitute its judgment for that of the Director or weigh the factual determinations made by the Director in its review. *Sandusky Dock Corp. v. Jones*, 10th Dist. No. 03AP-98, 2003-Ohio-7027, ¶ 3. *See also Licking Cty. Citizens for a Safe Environment* at 648, citing R.C. 3745.05, *Citizens Commt. to Preserve Lake Logan* at paragraph two of the syllabus ("ERAC was established to be a reviewing board and is authorized only to consider the reasonableness and the lawfulness of the Director's actions. As a reviewing board, ERAC is not permitted to stand in the place of the Director and substitute its judgment for that of the Director.").

{¶ 10} We review ERAC determinations pursuant to the standard in R.C. 3745.06. This court must affirm an ERAC order if we find "upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 3745.06. "In the absence of such a finding," we must "reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.*

{¶ 11} Applying this standard to the present appeal, we must determine whether ERAC's dismissal of the complaint challenging the Director's issuance of the Applegath permit is supported by the evidence and in accordance with law. "In determining whether an ERAC order is supported by reliable, probative, and substantial evidence, this court must

weigh and evaluate the credibility of the evidence." *Columbus Steel Castings Co. v. Nally*, 10th Dist. No. 11AP-932, 2012-Ohio-4417, ¶ 15.

{¶ 12} "A Civ.R. 12(B)(6) motion to dismiss evaluates the sufficiency of the complaint." *Ohio Neighborhood Preservation Assn. v. Alaura*, 10th Dist. No. 22AP-347, 2023-Ohio-1281, ¶ 7. In ruling on a motion to dismiss, the court must presume the truth of the factual allegations and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).

{¶ 13} Ohio is a notice pleading state, and, as such, does not require parties to plead their claims with particularity outside of the requirements described in Civ.R. 9(B). *Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, ¶ 10. "Ohio law does 'not require a complaint to contain anything more than brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule.' " *Ohio Neighborhood Preservation Assn.* at ¶ 10, citing *York v. Ohio State Hwy. Patrol,* 60 Ohio St.3d 143, 146 (1991) (Moyer, C.J., concurring). Notice pleading is met if a claim is pled with sufficient operative facts to allow the defending party to understand the nature of the allegation. *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 20. It is thus possible to satisfactorily plead a statutory violation without referencing a specific statutory citation if notice can be derived from the supporting factual allegations and discussion. *Thatcher v. Lauffer Ravines, L.L.C.,* 10th Dist. No. 11AP-851, 2012-Ohio-6193, ¶ 44. "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Byrd v. Meyer*, 10th Dist. No. 21AP-578, 2022-Ohio-1827, ¶ 13.

### B. Lawfulness of the Challenged Action

{¶ 14} Under the notice pleading standard, appellants were required to plead sufficient operative facts to put the Director on notice of their claim that the Director's actions were unlawful. With respect to appellants' lawfulness argument, ERAC concluded that "[a]ppellants do not argue that the Director acted *unlawfully* by failing to require Airstream to submit any specific data or analysis expressly required by Ohio's air pollution statutes and regulations. Rather, appellants argue that the Director acted unreasonably

because the operation of the Applegath Booster Station will result in a nuisance."
(Emphasis sic.) (ERAC Decision at ¶ 17.) Appellants allege this determination was
erroneous because ERAC applied the wrong standard of review. Specifically, appellants
assert their challenge to the lawfulness of the Director's actions was sufficiently pled to
survive a motion to dismiss and "[t]o require more than Appellants' allegations at a motion
to dismiss phase is contrary to established Ohio law." (Appellants' Brief at 18.) In support,
appellants cite their allegation in the Notice of Appeal that "[t]he Director's issuance of the
Permit is arbitrary, capricious, and otherwise inconsistent with law." (*Id.*, citing Notice of
Appeal to ERAC at ¶ 16.)

{¶ 15} Appellants failed to indicate in their Notice of Appeal which specific law or
regulation was violated by the issuance of the permit, either by an express reference to a
statute or rule or in a manner discernable from the pled operative facts. The allegation that
"the Permit fails to assure compliance with permit conditions and state air nuisance
requirements" (Notice of Appeal to ERAC at ¶ 16) is an unsupported legal conclusion, not
a factual allegation. And it is not sufficiently specific as to which conditions and
requirements the permitting process violated. Furthermore, permit applicants receive "a
presumption of compliance absent reliable, probative and substantial evidence to the
contrary." *Thermal-Tron, Inc. v. Schregardus*, 89 Ohio App.3d 816, 820 (10th Dist.1993).
Appellants did not plead any facts to support their claim that Airstream will be unable to
comply with the conditions set forth in the permit. Similarly, broad allegations that
Airstream will not comply with state air nuisance requirements do not adequately explain
appellants' basis for the claim.

{¶ 16} Conclusory statements that the Director's actions were "otherwise
inconsistent with law" are likewise insufficient under notice pleading requirements without
any allegations supporting a basis for the claim. "Ohio Adm.Code 3745-31-05(A)(2)
empowers the OEPA director to issue a permit if he [or she] determines, among other
things, that the action will not violate air pollution laws, including emissions standards
adopted by the OEPA. The director is required to consider compliance with all applicable
laws *prior* to issuing a permit." (Emphasis sic.) *Concerned Citizens of Cent. Ohio v.*

*Schregardus*, 148 Ohio App.3d 31, 35 (10th Dist.2002). At no point did the Notice of Appeal to ERAC allege the Director failed to consider a particular law, administrative rule, or environmental regulation prior to issuing the Applegath permit.

{¶ 17} Other portions of the Notice of Appeal to ERAC are factual but irrelevant and fail to state a claim that the Director's actions were unlawful. For example, appellants noted that an application for a Permit-to-Install must assure compliance with the "Best Available Technology" ("BAT"), requirement set forth in Ohio Adm.Code 3745-31-05(A)(3). However, appellants did not allege this requirement applied to the Applegath permit or that the Director erred by failing to consider it. It is undisputed by the parties and plainly stated in the permit that the Applegath Booster Station is considered a "non-major" emissions source with the potential to emit less than ten tons of air pollution per year. Ohio Adm. Code 3745-31-02(A)(1)(b); Ohio Adm.Code 3745-31-05(A)(3)(ii). BAT requirements are only applicable to major sources. R.C. 3704.03(T); *see also* Ohio Adm.Code 3745-31-05(A)(3)(ii). Therefore, this generic statement concerning the BAT requirement set forth in Ohio Adm.Code 3745-31-05(A)(3) cannot be said to provide sufficient notice of the appellants' claim in the first assignment of error.

### C. Reasonableness of the Challenged Action

{¶ 18} This fatal ambiguity continues through appellants' second assignment of error, which alleged the permit unreasonably authorizes the facility to operate in violation of Ohio Adm.Code 3745-15-07, causing a public nuisance. ERAC determined dismissal was appropriate because appellants failed to allege why the decision to issue the permit was unreasonable, stating "Appellants point to no specific aspect of Airstream's proposed operation of the Applegath Booster Station that will result in an *unreasonable* risk of harm to Appellants." (Emphasis sic.) (ERAC Decision at ¶ 23.) Specifically acknowledging the statements in Dr. Gorby's affidavit, ERAC concluded: "Appellants broadly assert that 'odor, fumes, gases, vapors and other substances and particulate matter' are generally harmful. They do not, however, distinguish such emissions from any other permitted emissions from

any other source, or indeed articulate the manner in which the risks posed by the emissions from the Applegath Booster Station will be unreasonable." (ERAC Decision at ¶ 23.)

{¶ 19} All parties agree that here, in order to establish unreasonableness in this case, appellants would have to prove the existence of a statutory nuisance. Nuisance is the wrongful invasion of a legal right or interest. *Scott v. Nameth*, 10th Dist. No. 14AP-630, 2015-Ohio-1104, ¶ 11. Nuisance claims may be brought for an unreasonable interference with a public right or for the wrongful invasion of private property. *Id.* Nuisance claims—both public and private—are additionally categorized as either absolute or qualified. *Natale v. Everflow Eastern, Inc.,* 195 Ohio App.3d 270, 2011-Ohio-4304, ¶ 21 (11th Dist.). The classification depends on the conduct giving rise to the nuisance: absolute nuisance is caused by an intentional act or abnormally dangerous condition, while qualified nuisance is caused by negligence. *Scott* at ¶ 12. "In addition to common-law public nuisance, Ohio has adopted statutes and administrative regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right." *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 712 (4th Dist.1993). "This is especially true where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist." *Id.* at 713.

{¶ 20} Ohio's air pollution nuisance rule states the "emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance." Ohio Adm.Code 3745-15-07(A).[1]

---

[1] In their briefs, Airstream and OEPA dispute whether ERAC applied the correct standard to analyze nuisance. Agreeing with ERAC, Airstream asserts that statutory public nuisance claims require a showing of negligence because such claims concern lawful conduct creating an unreasonable risk of harm. OEPA contends that the standard is set forth in the rule: "[i]t shall be unlawful for any person to cause, permit or maintain any such

{¶ 21} On appeal before this court, appellants specifically cite five portions of the record below to establish they satisfied the notice pleading requirement as to their nuisance claim:

> 1. "Appellants 'will be adversely affected by the Facility's carbon dioxide emissions and other greenhouse gases and the climate change to which such emissions will contribute.' "
>
> 2. "OEPA's issuance of the Permit in this matter will allow an additional source of similar air pollution to adversely affect CRST's members and the use and enjoyment of their properties. Additionally, they will be aggrieved and personally affected by the increases in the levels of pollution in the air caused by the Facility and by the Facility's emissions of carbon dioxide, formaldehyde, and other greenhouse gasses and the climate change to which such emissions will contribute."
>
> 3. "Adding more of the same pollutants and contaminants to the same air flow in the same neighborhood will cause worse medical problems and health conditions in CRST members and other Ohio citizens. Allowing this permit to proceed will worsen an already significant local public health crisis."
>
> 4. "The Director's issuance of the Permit is arbitrary, capricious, and otherwise inconsistent with law."
>
> 5. "The Permit's failure to account for the already harmful emissions from the neighboring Williams Compressor Station and the further inadequate limits imposed by this Permit will allow the Facility to operate in such a manner as to emit odor, smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, and other substances or combination of substances, and to endanger the health, safety, and welfare of the public or cause unreasonable injury or damage to property in violation of Ohio Adm. Code 3745-15-07."

---

public nuisance." Ohio Adm. Code 3745-15-07(A). It is not necessary, however, to resolve this disagreement for purposes of the present appeal because, under either standard, CRST fails to allege which conditions of the permit will result in nuisance and how.

(Emphasis deleted.) (Appellants' Brief at 15.)  In addition, appellants suggest three specific statements in the Gorby and Williamson affidavits provide evidence in support of their legal arguments:

> 1. "The additional air emissions from the proposed Booster Station will add to the harmful conditions already existing in the area and will cause me and my loved ones to suffer additional risk of harm to our health, safety and welfare."
>
> 2. "Even if Airstream is able to comply with the Permit conditions, the additional air emissions from the Booster Station will add to the harmful conditions already in the area and cause Appellants to suffer additional risk of harm to their health, safety and welfare."
>
> 3. "By allowing the emissions set forth in the Permit at issue in this matter, the Ohio EPA's issuance of the Permit will result in odor, fumes, gases, vapors and other substances and particulate matter in the air in, on, and around the Appellants' properties, thereby endangering the health, safety, and welfare of the Appellants and the public."

(*Id*. at 16.)  This, appellants argue, "satisfied their burden by presenting allegations and evidence of an unreasonable risk of harm," whereas ERAC's order suggests an expectation that appellants should "be able to **prove** negligence at the pleading stage of an appeal[.]" (Emphasis sic.)  (*Id*. at 16-17.)

{¶ 22}  But these statements are insufficient to satisfy notice pleading requirements as they amount only to a description of the detrimental effects of air pollution generally and within this specific community already plagued by the effects of another local facility. Appellant Darlene Williamson averred by affidavit that "the additional air emissions from the proposed Booster Station will add to the harmful conditions already existing in the area and will cause me and my loved ones to suffer additional risk of harm to our health, safety and welfare."  (Williamson Aff. at ¶ 6.)  She then drew from the language of the nuisance statute to state the conditions authorized in the permit "will result in odor, fumes, gases, vapors, and other substances and particulate matter in the air in, on, and around my property, thereby endangering my health, safety, and welfare and that of my family and

loved ones." (Williamson Aff. at ¶ 7.) Dr. Gorby averred that "the additional air emissions from the Booster Station will add to the harmful conditions already in the area and cause Appellants to suffer additional risk of harm to their health, safety and welfare." (Gorby Aff. at ¶ 7.)

{¶ 23} Neither the Notice of Appeal to ERAC nor the affidavits set forth specific emission limits or permit conditions that will cause the anticipated harm. Additionally, appellants failed to describe which harmful conditions were already present in the area due to the operation of the Williams Compressor Station. Finally, appellants failed to identify specific effects of the emissions; rather, they merely restated language from the nuisance rule. For example, while appellants did point to specific types of pollutants (such as carbon dioxide, formaldehyde, and other greenhouse gases), they failed to articulate which parts of the permit authorize these emissions and how the pollutants will create an unreasonable risk of harm to appellants and others living nearby. Despite having access to the Applegath permit, data concerning the Williams facility's operation, and a research scientist who reviewed the permit and performed air monitoring tests at several of the properties near the site of the Booster Station, appellants still failed to allege which aspects of the proposed operation of the Applegath facility will result in an unreasonable risk of harm. Without vast speculation, we cannot determine how appellants believe the facility's authorized activity will cause the anticipated risk of harm.

{¶ 24} Notice pleading requires more. Here, neither assignment of error in the ERAC appeal provided the Director adequate notice. While appellants are not required to prove their claims at this stage of the proceedings, they must connect their claims to a minimal amount of operative facts.

## IV. Disposition

{¶ 25} We find ERAC's decision granting Airstream's motion to dismiss is supported by reliable, probative, and substantial evidence and is in accordance with law because appellants failed to state a claim upon which relief can be granted. *See* Civ.R. 12(B)(6). Appellants' sole assignment of error is therefore overruled.

Nos. 22AP-393, 22AP-394, 22AP-395, 22AP-396, 22AP-397, 22AP-398, 22AP-399    13
22AP-400, 22AP-401, 22AP-402, 22AP-403, 22AP-404, 22AP-405, 22AP-406,
22AP-407, 22AP-408, 22AP-409, 22AP-410, 22AP-411, 22AP-412, 22AP-413,
22AP-414, 22AP-415, & 22AP-416

*Judgments affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

————————————